UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>v.<br>MOSHE BERGER,<br>Defendant. | 24-CR-172 (RA)<br>ORDER |

RONNIE ABRAMS, United States District Judge:

The Court is in receipt of the attached letter filed *pro se* by Mr. Berger. Among other things, he contends that "[t]he Speedy Trial Clock has been surpassed" because he "never agreed to Speedy Trial exclusions other than mandated." Mr. Berger also seeks to substitute his current CJA counsel, Stephen Turano, on the basis that Mr. Turano does not possess sufficient "time and economic resources" and is therefore "conflicted." The applications are denied.

The Speedy Trial Act explicitly authorizes a judge to grant an "ends of justice" continuance "on [her] own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government." 18 U.S.C. § 3161(h)(7)(A). Based on the plain language of the statute, the Second Circuit has concluded that "a district court may grant a continuance sought by counsel without the consent of the defendant so long as the district court determines that the ends of justice would be served . . . and sets forth its reasons on the record." *United States v. Lynch*, 726 F.3d 346, 356–57 (2d Cir. 2013). As the Circuit observed, "[t]his rule aligns with the view that continuances are '[s]cheduling matters' that are 'plainly among those for which agreement by counsel generally controls.'" *Id.* (quoting *New York v. Hill*, 528 U.S. 110, 115 (2000)).

Throughout this prosecution, the Court has excluded periods of time under the Speedy Trial Act in the interest of justice to allow Mr. Berger to prepare—and the Government to review—a

mitigation submission, to allow Mr. Berger's multiple different counsel to familiarize themselves with his case, and to allow for negotiations to take place between the parties. *See, e.g.*, Dkts. 14, 16, 18, 21, 28, 30, 32, 36, 38, 52, 69, 81, 90. The exclusions also allowed his counsel to evaluate mental health treatment options and for Mr. Berger to consider whether he would be interested in participating in the BRIDGE Court, a new judicially supervised pretrial program focused on individuals whose mental health diagnosis is the predominant contributor to their offense conduct. *See* Dkt. 72 at 9, Dkt. 74 at 3, Dkt. 77 at 2–3, Dkt. 82 at 3, 16–17. Because the Court concluded that the exclusions of time served the ends of justice under 18 U.S.C. § 3161 and set forth its reasons in the record, Mr. Berger's rights under the Speedy Trial Act have not been violated. *See Lynch*, 726 F.3d at 355. On consent of the parties, the Court has now scheduled trial for April 26, 2027. *See* 11/18/26 Oral Order. It is the Court's understanding that the parties have discussed the possibility of Mr. Berger entering into a deferred prosecution agreement and that negotiations regarding the precise terms of that agreement remain ongoing.

With respect to Mr. Berger's request to substitute his counsel, the Second Circuit has been clear that although "a defendant has a right to counsel of his choice under the Sixth Amendment, it is not an absolute right. Absent a conflict of interest, a defendant in a criminal case does not have the unfettered right to retain new counsel." *United States v. Brumer*, 528 F.3d 157, 160 (2d Cir. 2008) (quotation marks omitted). "In determining whether to allow a defendant to retain new counsel, [a] court must consider . . . the risks and problems associated with the delay, and whether substitutions would disrupt the proceedings and the administration of justice." *United States v. Paone*, 782 F.2d 386, 392 (2d Cir. 1986).

Mr. Turano is Mr. Berger's fifth attorney in this case. Mr. Berger was initially assigned counsel from the Federal Defenders, whom he sought to relieve. He was then represented by

retained counsel, Hanna Shoshany, whom Mr. Berger terminated. After the Court appointed Harvey Fishbein from the CJA panel to represent Mr. Berger, Mr. Berger hired a private attorney, Steven Yurowitz, whom he sought to relieve just a few weeks later. Most recently, the Court appointed Mr. Turano from the CJA panel to represent Mr. Berger. When Mr. Berger sought to terminate Mr. Yurowitz, the Court warned him that he would not be permitted to delay proceedings by "choreograph[ing] special appearances by counsel or alternat[ing] his position on counsel." Dkt. 72 at 2:21–3:8. As the Court explained when it denied Ms. Berger's earlier request to substitute Mr. Turano on September 2, 2026, Mr. Turano is "a well-respected lawyer who has, from the Court's perspective, provided Mr. Berger first-rate advocacy." Dkt. 86 at 2. Indeed, it appears that as a result of his advocacy, the Government has agreed to offer Mr. Berger a deferred prosecution agreement, even if the final conditions of that agreement have not yet been agreed upon. For the foregoing reasons, and particularly in light of the parties' ongoing negotiations, the Court concludes that a further substitution of counsel "would disrupt the proceedings and the administration of justice." *Paone*, 782 F.2d at 392. The Court also reiterates that "to the extent . . . Mr. Turano requires additional assistance to effectively represent Mr. Berger, he may make an application with the Court." Dkt. 86 at 2. Ms. Berger's application to replace Mr. Turano is therefore denied. To the extent Mr. Berger raises any other actionable concerns in his letter, the Court will address these at the appropriate time.

SO ORDERED.

Dated: November 18, 2026
New York, New York

Ronnie Abrams
United States District Judge

TRULINCS 00275511 - BERGER, MOSHE - Unit: BRO-K-B

---

FROM: 00275511
TO: Esq, Eli; Minakan, Ying; Turano, Stephen
SUBJECT: JUDICIAL LETTER
DATE: 11/06/2026 08:55:02 PM

The Honorable Judge Ronnie Abrams (RA)
United Stated District Judge (SDNY)
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, N.Y. 10007-1312

[DATE - 10/20/2026]

[SENT VIA REGULAR MAIL U.S. MAIL]

Greetings Your Honor,

Please review the pro se instant Emergency Relief liberally.

THRESHOLD ISSUE - The Speedy Trial clock has been surpassed. The Defendant has never agreed to Speedy Trial exclusions other than mandated. The Defendant respectfully proposes that the parties execute the DPA inclusive of all stipulations the Defendant emailed to counsels on 10/31/2026.

The Defendant is represented by a [conflicted] CJA counsel Stephen Turano. Counsel Turano, while [always respected], counsel concedes to experiencing "economic hardships" via his letter Dkt.(87) to Your Honor which indisputably deems him [conflicted counsel] for past, present and future representations.

As Your Honor is well aware, the Defendant is [absolutely] entitled to [non-conflicted] assistance of counsel at all times relevant to his ongoing federal, criminal case grounded upon the 6th Amendment. Such extraordinary circumstances, arrays of constitutional violations are incurable, thus, the case is essentially tainted and should be dismissed with prejudice based on the extenuating circumstances this court is well aware of also mentioned via retained counsel(s) proposed motions to dismiss and motions to dismiss Dkt.(55), the Federal Defenders (non-fraudulent aspects of the draft DPA) and considering the facts in the prima facie record.

Additionally, I believe that Your Honor may have issued a court ORDER that is defective dated 09/02/2026 Dkt.(86), see my observations below:

POTENTIAL COURT ORDER DEFECT - Your Honor construed my EMERGENCY application for a MONSANTO "STYLED" EMERGENCY MOTION, other non-addressed relief as: 1) a [non-emergency] and may have overlooked that my motion provided multiple, cost effective options for the court to consider, not just a MONSANTO "STYLED" HEARING. I construe a Monsanto "styled hearing" as a hearing that includes Monsanto "styled" hearing components, see Monsanto components below:

a. Monsanto tests [probable cause] for the asset forfeiture framed as an [allegation] in the indictment

b. Monsanto verifies [nexus] between alleged crimes and said property in the Rule 16 Discovery

c. Monsanto confirms if the AUSA [instructed] the grand jury on the three asset forfeiture statutes appearing in the asset forfeiture allegation (which is not a mere notice) charged in the indictment because it is framed as an [allegation], "notice" is nowhere mentioned. Here, the Asset Forfeiture allegation consumes the majority of the indictment and charges/pursues three statutes i.e., 18 USC 981, 21 USC 853, 28 USC 2461. The SDNY AUSAS routinely add-on to indictments after the grand jury passed without any further grand jury involvement which is essentially a fraud tainting all proceedings, see, Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).

d. Monsanto verifies [adequate grand jury] vote upon the allegation, allows tracing and separation of the alleged tainted assets from non-tainted assets. The Defendant needs use of his non tainted assets to hire his [non-conflicted] counsels of choice, which here is his [absolute] right given that respected CJA counsel Mr. Turano concedes to being [conflicted] by way of "economic hardship" based on his letter to Your Honor @ Dkt.(87).

---

Counsel Turano's "economic hardship" letter indisputably admits economic hardship which re-confirms that counsel is [conflicted] which was expected all along based upon counsel's array of inactions, inability to provide copies of legal documents to the incarcerated Defendant after months of respectful requests, counsel not filing routine pre trial motions i.e., Motion to Dismiss, fact finding hearings, evidentiary hearings, Bill of Particulars, asset tracing hearings, Monsanto styled hearings, Banco Cafetero asset tracing, probable cause hearings, Brady/Giglio requests, OPR complaints given that the original AUSA knowingly initiated and continued prosecuting in bad faith.

e. GOVERNMENT'S FORFEITURE DEFENSE - The government based on other cases routinely opposes defense side asset forfeiture challenges. The government recovers billions annually from asset forfeiture legally and illegally, note CAFRA 2000. The government is well aware that mere "notice of asset forfeiture" is not an allegation. The indictment frames asset forfeiture as an [allegation], not a mere notice. There is a significant difference between mere "notice of forfeiture" and an "asset forfeiture allegation" obviously and fundamentally.

Asset forfeiture allegation in an indictment requires adequate vote, instruction, probable cause, nexus, [grand jury involvement] while mere notice asset forfeiture does not, see CA2 CASE 14-1625, USA v. WILLIAM R. COSMO, also see USA v. FISHER, 273 F. Supp. 3d 354, 2017. LEIXIS 100321. The instant case twist of the many, is that the property mentioned in the Rule 16 Discovery is innocent property that the alleged victim(s) verifiably [stole] from the Defendant, prima facie in Rule 16 Discovery.

f. TRO, MONSANTO "STYLED HEARING", ASSET FORFEITURE, ASSET TRACING, FACT FINDING HEARINGS - The same ORDER Dkt.(86) also misconstrued my pointing out that CJA was inadequate ample resources, as a request for substitution of the current CJA. To be clear, my request was not for substitution of CJA counsel for another CJA that does not have ample economic and time resources perpetually (as per the public and non public domain records, SDNY Judges, SCOTUS Chief, SDNY Bar associations etc). Proofs of the severe, perpetual CJA economic sequestration issues can be filed under seal should Your Honor wish to inspect them.

Your Honor's ORDER Dkt.(86) does suggest that CJA can apply for resources as needed but this may be too little, too late because current CJA counsel Turano concedes in his letter to the court Dkt.(87) that he has been and is operating in an "economic hardship" which gives rise to a prima facie 6th Amendment violation which indisputably confirms that the CJA counsel is indeed [conflicted] which is an extenuating circumstance that gives rise to my [absolute] right to be represented by [non-conflicted] counsel of choice that I can afford. CJA cannot uphold its mission. The court is aware that the Defendant is indigent caused by the alleged victim(s) outright fraud schemes which is an overwhelming [threshold showing] that the Defendant has no other economic resources other than his own innocent assets illegally restrained by the alleged victim(s).

The extenuating circumstances are also unconstitutional considering my disability, unwarranted, improper ongoing pre-trial, lengthy imprisonment, theft of my assets by the government's alleged victim(s) while being improperly prosecuted paired with interference with my absolute 6th Amendment right to [non-conflicted] counsel of choice. Such an array of constitutional deprivations nearly guarantees that the government cannot prevail and continues to waste an array of valuable, scarce resources while keeping the Defendant unconstitutionally incarcerated while ignoring judicial economy and the U.S. Constitution caused by the original AUSA/James Mandilk.

Dkt.(86) COURT ORDER DENIES two reliefs: 1) The TRO was one of two reliefs DENIED of the array proposed in Dkt.(86). My request for a TRO pursuant to 21 USC 853 upon alleged victim(s) assets which are verifiably my innocent assets needed to retain top lawyers A.S.A.P. as my counsel of choice, co-counsel and or as retained counsels potentially used in a "hybrid" styled legal representation. Hybrid representation in my view includes use of counsel of choice and CJA which is not an uncommon practice in the SDNY based on other SDNY cases which can be cited under seal. This sometimes occurs when CJA and the Defendant come up short on economic resources, CJA cannot uphold its mission or the U.S. Constitution.

Many SDNY cases allow hybrid representation under similar circumstances whereby the Defendant is regretfully, unlawfully pauperized by the government's errors, verified fake victim(s), prosecutorial misconduct and.or the Defendant is a victim of limited CJA, defense side budget, severe CJA economic sequestration. While it may be unpopular to disclose and confirm that the CJA cannot uphold their mission, it is a fact, as well as a verified indisputable [constitutional crisis].

Perpetual lack of adequate CJA budgeting is indisputably a real thing (a substantial constitutional violation/crisis, perpetual) in the public domain as extensively observed all the way up to Chief Justice Roberts of SCOTUS and Congress.

Essentially, we have a legal system that in part [pretends] to uphold the U.S. Constitution thus, we regretfully have a [constitutional crisis] which is another substantial counsel conflict warranting counsel of choice to be paid for with my own innocent assets which are the only assets I have available at this time but remain as an ill-gotten gain in the "dirty" hands of the government's alleged victim(s) which is an extraordinary circumstance and why Emergency Relief is warranted.

---

Many criminal cases involving monies owed by alleged victim(s) involve fake victim(s) attempting to lodge false claims to cause a bad faith prosecution in efforts to escape their own criminal prosecution, prison time, expense which is nothing new here for the government. SDNY AUSAS are well aware of this fact.

g. ABSOLUTE RIGHT TO COUNSEL OF CHOICE - Your Honor's ORDER Dkt.(86) essentially opines that the Defendant's 6th Amendment assistance of counsel rights (which includes counsel of choice) is not [absolute] [unless] there is an exception i.e., appointed counsel is [conflicted], applicable here and perhaps overlooked by Your Honor respectfully.

h. COUNSEL ECONOMIC HARDSHIP IS A CONFLICT - Counsel is in conflict by way of his own, indisputable admissions of "economic hardships" as an active CJA. Any CJA that admittedly does not possess ample time and economic resources (which is likely 99% of them) at any RELEVANT time during representation of his client and conceals to it, is indeed [conflicted] giving rise to 6th Amendment violations at the least triggering another array of constitutional violations. Economic sequestration, CJA hardships are no fault of the Defendant nor should the court blame the Defendant. Conflicted counsel violates the 6th Amendment.

i. INNOCENT ASSETS - Note that the government is well aware that the fake victim(s) hold my innocent assets as an ill-gotten gain despite my needing them to support my mom, live and pay for counsels of choice as of [absolute] right under the extenuating circumstances. I too face an array of crisis however, it is caused by the alleged victim(s) and government malfeasance, errors, prosecutorial misconduct originating from original AUSA/James Mandilk who departed from the instant case long ago.

j. AUSA/BOP LETTER ISSUE - The respected current AUSA Fry sent Your Honor a letter Dkt.(76) that has substantial inaccuracies within it i.e., AUSA claims that she corresponded with (unnamed) BOP personnel regarding that Defendant's claims of there being regular [lock-ins], [MODIFIED OPERATIONS], [lock-downs] that interfere with the Defendant's entitled access to his lawyers, the courts, law library, computers, emails, phones, printers, discovery computers, hygiene etc. UNIT 82 housing the Defendant, most all MDC UNITS are subject to weekly [lock-ins], weekly [MODIFIED OPERATIONS], note racial riot/stabbings, "lock-down" on ~09/14/2026, UNIT 82 alleged murder.

The (unnamed) BOP staff that spoke to the respected AUSA omitted that modified operations are a regular weekly occurrence weekly depriving prisoners of their constitutional rights spelled out in the prisoner handbook. I will need the names of the staff that the AUSA spoke to and supporting BOP records. The BOP conceals the constitutional violations by using certain terms i.e. "lock-ins" v. "lock-downs" or "MODIFIED OPERATIONS" which are invisible if lasts less that 48 hours. BOP does not issue BOP memos about weekly "lock-ins" which is 50% of the supposed free time of the prisoner, so the prisoner serves 150%+ of a term imposed at MDC.

Your Honor can contact counselor Brito or the new UNIT TEAM Manager Ms. Bolt in UNIT 82 to confirm if what the AUSA claimed in her letter is inaccurate. If the BOP is untruthful, we can subpoena the phone and computer logs which will prove that the Defendant's claims are truthful, violate his constitutional prisoner rights regularly i.e., 4th, 5th, 6th and 8th Amendments.

RELEIEF SOUGHT - Perhaps approve the DPA stipulations emailed to counsels by the Defendant on 10/31/2026. Your Honor's approval will properly resolve the case.

Respectfully submitted,
/s/
Moshe Berger

Berger - 00275-511
...itan Detention Center
...x 329002
... N.Y. 11232-9002

MID-ISLAND NY 117
9 NOV 2026 PM 5 L

SDNY
US MAIL

The Honorable Ronnie Abrams
United States District Judge
SDNY
40 Foley Square
New York, N.Y. 10007

Legal Mail

10007-150299